Filed 4/19/23  P. v. Kennedy CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E079728 |
| v. | (Super. Ct. No. FVI1902713) |
| DAMEYION TYSHON KENNEDY, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of San Bernardino County.  Debra Harris, Judge.  Affirmed.

Susan S. Bauguess, under appointment by the Court of Appeal, for Defendant and Appellant.

No appearance for Plaintiff and Respondent.

## I.

## INTRODUCTION

Defendant and appellant Dameyion Tyshon Kennedy appeals from a postjudgment

1

order denying his Penal Code[1] section 1172.6 (formerly section 1170.95)[2] petition for resentencing under the procedures established by Senate Bill Nos. 775 and 1437. Counsel has filed a brief under the authority of *People v. Wende* (1979) 25 Cal.3d 436 (*Wende*) and *Anders v. California* (1967) 386 U.S. 738, requesting this court to conduct an independent review of the record.  In addition, defendant has had an opportunity to file a supplemental brief with this court and has done so.  Based on our independent review of the record for potential error and considering defendant's personal supplemental brief in support of his appeal, we affirm the trial court's denial of the petition for relief under section 1172.6.

## II.

## FACTUAL AND PROCEDURAL BACKGROUND[3]

In Victorville in 2009, defendant and Antoinette Pearson had an ongoing relationship and were the parents of a son.  Pearson had another older son, Darnell, who was 17.

On the evening of December 10, 2009, defendant borrowed Pearson's car, a burgundy Mercury, to take Darnell to his friend Maurice's house to retrieve a video

---

[1]  All future statutory references are to the Penal Code.

[2]  Effective June 30, 2022, the Legislature renumbered section 1170.95 as section 1172.6, with no substantive change in text.  (Stats. 2022, ch. 58, § 10.)  We cite to section 1172.6 for ease of reference unless otherwise indicated.

[3]  The factual background is taken verbatim from this court's nonpublished opinion in defendant's direct prior appeal, case No. E063170, which we took judicial notice of.  (*People v. Kennedy* (Sept. 6, 2016, E063170) [nonpub. opn.] (*Kennedy I*).)

2

game.  Maurice lived with his grandmother and his brothers.  Maurice's uncle, Jeffrey Hughes, lived in the garage.

Hughes is an East Coast Crips gang member.  Hughes has "EC" for "East Coast" tattooed on his chest and "ECBC" for "East Coast Block Crips" and "118th Street" tattooed on his arm.  The Crips identifying color is blue.

On that night, defendant was wearing Crips gang colors—blue sweat pants, a blue shirt, and a blue cap.  Darnell testified that, while they were driving to Maurice's house, defendant braked sharply for no apparent reason in front of a marked patrol car being driven by Deputy Sheriff Maria Gascon.  The deputy activated her patrol unit's lights and signaled defendant to stop.  Defendant pulled over, jumped out of the car, and told Darnell to drive away but Darnell did not do so.

Defendant and Deputy Gascon yelled at one another.  Deputy Gascon ordered defendant to get back into his car.  Defendant finally complied but immediately drove off, tires screeching.  He pulled out a gun and tossed it to Darnell who used his shirt to grab the gun without touching it and tossed it back into defendant's lap.

Deputy Gascon called for backup and pursued defendant with lights and sirens activated.  While traveling 50 or 60 mph, defendant told Darnell, "I'm going to start barking," which means shooting.  Darnell warned, "Don't because she going to shoot back."  Defendant continued to drive fast, braking hard numerous times and speeding. When they arrived at Maurice's house, Darnell jumped out of the moving car and ran inside the house.

3

Defendant continued driving until he finally pulled over and fired three shots at Deputy Gascon behind him. Deputy Gascon saw the flash from defendant's gun and ducked to her right. There was a bullet hole in the patrol car's windshield on the driver's side. Defendant drove off again and Deputy Gascon followed while defendant slammed on his brakes, made a U-turn, and drove directly at her. As defendant passed Deputy Gascon, he shot again and she returned fire, ducking as two bullets hit the side of the patrol car. When Deputy Gascon tried to follow defendant again, she lost him.

Defendant drove back to Maurice's residence, parked near the garage and knocked on Hughes's door. Defendant announced to Hughes, "I popped that bitch" and "I hope I hit that bitch." Defendant was rushed and angry and wanted to find Darnell and Maurice. Defendant asked Hughes if he could park the car in the garage to conceal it.

Inside the main house, defendant told Darnell, "Tell your mom I messed up. I shot at the police." When Hughes tried to move the car into the garage, he was unable to unlock the steering wheel. Because Hughes heard police cars, he got defendant to drive the car into the garage.

Defendant then took out his gun, slid the chamber back to eject the cartridge, and inserted the clip. Defendant asked Hughes where he could hide his gun. Defendant then used the bathroom and left.

Deputies came to the residence and found Pearson's car in the garage. Detective Kevin Warner searched the garage and found blue sweat pants, a beanie cap, CDs, and a do-rag. Inside the beanie cap were keys, including one for Pearson's car. Defendant's

4

identification and a piece of mail addressed to him were inside the sweatpants pockets. One of the CDs had "BLACC" written on it with the "B" crossed out and "CC" instead of "CK".[4]

A short time later, a CHP officer apprehended defendant near Hughes's residence and near where the shootings had occurred. Defendant was wearing blue basketball shorts, a mostly blue shirt with a Mickey Mouse image, and white sneakers with orange detailing.

On April 30, 2012, a jury found defendant guilty of two counts of premediated and willful attempted murder of a police officer (§§ 664/187, subd. (a); counts 1 & 2), evading a police officer (Veh. Code, § 2800.2, subd. (a); count 3), possession of a firearm by a felon (former § 12021, subd. (a)(l); count 4), and street gang terrorism (§ 186.22, subd. (a); count 5). The jury also found true that counts 1 and 2 were committed with the personal use of a firearm (§ 12022.53, subd. (b)) and the personal and intentional discharge of a firearm (§ 12022.53, subd. (c)), counts 1 through 4 were committed for the benefit of a street gang (§ 186.22, subd. (b)), and counts 3 and 5 were committed with the personal use of a firearm (§ 12022.53, subd. (a)). In a bifurcated proceeding, the trial court found true that defendant had suffered a prior strike conviction (§§ 667, subds. (b)-(i), 1170.12, subds. (a)-(d)) and a prior serious felony conviction (§ 667, subd. (a)). The

---

[4] The gang expert testified that the CD was gang-related because the rival gang, Bloods, are indicated by "B," and use "CK" to indicate "Crips Killer" so Crips avoid those letters.

court sentenced defendant to a determinate sentence of 28 years eight months and an indeterminate sentence of 110 years to life in state prison. (*Kennedy I*, *supra*, E063170.)

On September 6, 2016, this court affirmed the judgment, but agreed with the parties that defendant's conviction for the street gang terrorism (count 5) should be reversed because defendant acted alone, and section 186.22, subdivision (a), requires him to have acted in concert with other gang members. (See *Kennedy I*, *supra*, E063170.) Accordingly, on April 5, 2017, an amended abstract of judgment was filed, deleting defendant's conviction and sentence on count 5, resulting in a determinate term of 27 years four months.

On January 1, 2019, Senate Bill No. 1437 became effective, which amended the felony-murder rule and the natural and probable consequences doctrine as it relates to murder. (See Stats. 2018, ch. 1015, § 1, subd. (f).) Senate Bill No. 1437 also added former section 1170.95 (now section 1172.6), which created a procedure for offenders previously convicted of murder to seek retroactive relief if they could no longer be convicted of murder under the new law. (Stats. 2018, ch. 1015, § 4.) Effective January 1, 2022, Senate Bill No. 775 clarified that "persons who were convicted of attempted murder or manslaughter under a theory of felony murder and the natural probable consequences doctrine are permitted the same relief as those persons convicted of murder under the same theories." (Stats. 2021, ch. 551, § 1.) This change in the law was "to ensure that murder liability is not imposed on a person who is not the actual killer, did not

act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life." (Sen. Bill No. 1437, § 1, subd. (f).)

On January 27, 2022, defendant in propria persona filed a petition for resentencing pursuant to former section 1170.95. Defendant was appointed counsel on April 8, 2022.

On August 19, 2022, following a prima facie hearing to determine defendant's eligibility for resentencing pursuant to section 1172.6, the trial court denied defendant's petition. The court found the jury had already determined the mental state for attempted murder. The court explained, "I'm looking at the jury instructions to see, and I'm just going through whether or not there's a -- I do find a special allegation as to [defendant] as willful, deliberate, and premeditated to be found true to the attempted murder. That in effect would -- that is a finding by the jury." Defendant timely appealed.

## III.

## DISCUSSION

After defendant appealed, appointed appellate counsel filed a brief under the authority of *Wende*, *supra*, 25 Cal.3d 436 and *Anders v. California*, *supra*, 386 U.S. 738, setting forth a statement of the case, a summary of the procedural background and potential issue of whether the court erred in denying defendant relief under section 1172.6, and requesting this court to conduct an independent review of the record.

We offered defendant an opportunity to file a personal supplemental brief, and he has done so. In his supplemental brief, defendant primarily raises arguments related to

his underlying trial, such as officers making false reports, false testimony, his sentence, the gang and gun enhancements, misidentification, and the charges.

A. *Wende Procedure for Postjudgment Appeals*

Preliminarily, we note that our Supreme Court recently held the procedures set out in *Wende* do not apply to an appeal from a denial of relief under section 1172.6. (*People v. Delgadillo* (2022) 14 Cal.5th 216, 222 (*Delgadillo*).) However, "[w]hen appointed counsel finds no arguable issues to be pursued on appeal: (1) counsel should file a brief informing the court of that determination, including a concise recitation of the facts bearing on the denial of the petition; and (2) the court should send, with a copy of counsel's brief, notice to the defendant, informing the defendant of the right to file a supplemental letter or brief and that if no letter or brief is filed within 30 days, the court may dismiss the matter. [Citations.] [¶] If the defendant subsequently files a supplemental brief or letter, the Court of Appeal is required to evaluate the specific arguments presented in that brief and to issue a written opinion. The filing of a supplemental brief or letter does not compel an independent review of the entire record to identify unraised issues." (*Id*. at pp. 231-232.) Nonetheless, "the Court of Appeal is not barred from conducting its own independent review of the record in any individual section 1172.6 appeal." (*Id*. at p. 232.)

The appellate review procedures employed here conform to those required under *Delgadillo*. Defendant was served with counsel's brief indicating no arguable issues were identified for appeal, this court issued a letter inviting defendant to file his own

8

personal letter or brief and he did so. In addition to considering the issues raised in defendant's personal brief, we have conducted an independent review of the record. (*Delgadillo*, *supra*, 14 Cal.5th at p. 232.)

B. *Section 1172.6 Petition for Resentencing Legal Background*

Effective January 1, 2019, the Legislature passed Senate Bill No. 1437 "'to amend the felony murder rule and the natural and probable consequences doctrine, as it relates to murder, to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life.'" (*People v. Gentile* (2020) 10 Cal.5th 830, 846-847; see Stats. 2018, ch. 1015, § 1, subd. (f).) The Legislature accomplished this by amending sections 188 and 189.

Section 188, which defines malice, now provides in part: "Except as stated in subdivision (e) of [s]ection 189, in order to be convicted of murder, a principal in a crime shall act with malice aforethought. Malice shall not be imputed to a person based solely on his or her participation in a crime." (§ 188, subd. (a)(3); Stats. 2018, ch. 1015, § 2.) Section 189, subdivision (e) now limits the circumstances under which a person may be convicted of felony murder: "A participant in the perpetration or attempted perpetration of a felony listed in subdivision (a) [defining first degree murder] in which a death occurs is liable for murder only if one of the following is proven: [¶] (1) The person was the actual killer. [¶] (2) The person was not the actual killer, but, with the intent to kill, aided, abetted, counseled, commanded, induced, solicited, requested, or assisted the

9

actual killer in the commission of murder in the first degree.  [¶]  (3) The person was a major participant in the underlying felony and acted with reckless indifference to human life, as described in subdivision (d) of [s]ection 190.2." (Stats. 2018, ch. 1015, § 3.)

Effective January 1, 2022, Senate Bill No. 775 expanded eligibility for relief to include individuals convicted of attempted "murder under the natural and probable consequences doctrine or other theory under which malice is imputed to a person based solely on that person's participation in a crime."  (§ 1172.6, subd. (a), as amended by Stats. 2021, ch. 551, § 2; Legis. Counsel's Dig., Sen. Bill No. 775 (2021-2022 Reg. Sess.).)  But it did not expand eligibility for relief pursuant to section 1172.6 to one who is the actual person who commits murder or attempted murder.

Senate Bill No. 1437 also created a procedure for offenders previously convicted of felony murder or murder under the natural and probable consequences doctrine to seek retroactive relief if they could no longer be convicted of murder under the new law. (§ 1172.6, subd. (a); *People v. Gentile*, *supra*, 10 Cal.5th at p. 843; *People v. Lewis* (2021) 11 Cal.5th 952, 959; *People v. Strong* (2022) 13 Cal.5th 698, 708.)  "[T]he process begins with the filing of a petition containing a declaration that all requirements for eligibility are met [citations], including that '[t]he petitioner could not presently be convicted of murder or attempted murder because of changes to . . . [s]ection 188 or 189 made effective January 1, 2019 . . . ."  (*People v. Strong*, *supra*, at p. 708, fn. omitted.) "When the trial court receives a petition containing the necessary declaration and other required information, the court must evaluate the petition 'to determine whether the

10

petitioner has made a prima facie case for relief.' [Citations.] If the petition and record in the case establish conclusively that the defendant is ineligible for relief, the trial court may dismiss the petition." (*Ibid*.) "Senate Bill [No.] 1437 relief is unavailable if the defendant was either the actual killer, acted with the intent to kill, or 'was a major participant in the underlying felony and acted with reckless indifference to human life . . . .'" (*Id*. at p. 710.)

C. *Analysis*

Here, defendant's record of conviction shows that he was the actual person who attempted to kill a police officer. In addition, there is no indication in the record that instructions regarding aiding and abetting, the natural and probable consequences doctrine, or the felony murder rule should have been given to defendant's jury. Defendant was not an aider and abettor or major participant; he was the direct perpetrator of the crime. (See *Delgadillo*, *supra*, 14 Cal.5th at p. 233 [no entitlement to relief under section 1172.6 where the petitioner was the actual killer and only participant in the killing arising from a traffic accident and prosecuted as second degree murder under an actual implied malice theory and as gross vehicular manslaughter while intoxicated].)

As to defendant's contentions relating to his underlying trial, those claims are not properly before us. Because defendant appealed from a denial of his petition for resentencing pursuant to section 1172.6, he could only raise issues related to the denial of the petition. Defendant's underlying case is long final. Thus, defendant's arguments related to the trial are improper.

In sum, defendant was the sole perpetrator of the attempted killing. He was not prosecuted under the natural and probable consequences doctrine or under the felony murder rule. Defendant is therefore ineligible for relief under section 1172.6 as a matter of law. (See § 1172.6, subd. (a).) The trial court did not err in denying defendant's request for relief under section 1172.6.

IV.

DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

CODRINGTON
J.

We concur:

RAMIREZ
P. J.

SLOUGH
J.

12